## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | **CHAPTER 11** |
| | ) | |
| **VERSO TECHNOLOGIES, INC.,** | ) | **Case No. 08-67659** |
| | ) | |
| Debtor. | ) | |
| | ) | |

## APPLICATION FOR APPROVAL OF EMPLOYMENT OF
## NACHMANHAYSBROWNSTEIN, INC.
## AS MANAGER AND CHIEF ADMINISTRATION OFFICER FOR DEBTORS

**COME NOW** Verso Technologies, Inc., sentitO Networks, Inc., Telemate.Net Software, Inc., Verso Verilink, LLC, and Verso Backhaul Solutions, Inc., debtors and debtors in possession in the above-styled Chapter 11 cases[1] (collectively, the "Debtors"), and, pursuant to § 327 of Title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 2014, apply for approval of the employment of NachmanHaysBrownstein, Inc., ("NHB") as manager and chief administration officer for the Debtors.  In support thereof, the Debtors show as follows:

1.    On April 25, 2008 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code.  The Debtors have remained in possession of their assets, and have continued to operate their businesses and manage their property as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.    The Debtors operate a global technology company providing next-generation communications network solutions to carriers, enterprises, governments and government-related entities.  The Debtors manufacture, deliver and support these hardware, software and service solutions primarily to large wireline, cellular, wireless and satellite carriers.  Their product offerings include Worldwide Interoperability for Microwave Access, Inc. (WiMAX), cellular

---

[1] The Debtors have requested joint administration of their cases.  In contemplation of joint administration, the Debtors are filing all first day motions (other than the joint administration motion) in the main case styled above.

backhaul, voice over broadband (VoBB), voice over Internet protocol (VoIP), integrated access devices (IAD), and Internet usage solutions which are enabled by the Company's hardware and software. Verso Technologies, Inc. is a publicly traded company on the NASDAQ Capital Market which generates revenues from four operating co-Debtor subsidiaries: (i) sentitO Networks, Inc., (ii) Telemate.Net Software, Inc., (iii) Verso Backhaul Solutions, Inc., and (iv) Verso Verilink, LLC.

3.    During the period from April 14, 2008, through and including April 18, 2008, an NHB caseteam including John L. Palmer, one of NHB's Managing Directors, was retained by Laurus Capital Management LLC ("Laurus"), a secured creditor of the Debtors, for the purpose of providing an assessment of the Debtors and their operations. NHB and Mr. Palmer have discussed the Debtors' financial condition and status of their operations directly with representatives of Laurus, and NHB was paid $48,953.75 in fees and reimbursement of expenses totaling $53,789.37 for the assessment. NHB is not a law firm, and does not provide legal or other services that are subject to state license or concomitant conflicts of interest rules. Nonetheless, NHB and Mr. Palmer do not believe that this prior engagement creates any conflict of interest nor renders them to run afoul of the "disinterestedness" requirement of the Bankruptcy Code.

4.    On or about April 28, 2008, the Debtors entered into a Management Agreement with NHB pursuant to which NHB agreed to provide continuing services to assist with the insolvency, reorganization, and restructuring processes and, if appropriate, the Debtors' efforts to sell various divisions and/or assets of the Debtors.

5.    By this Application, the Debtors seek to employ and to retain NHB pursuant to section 327(a) of the Bankruptcy Code as management consultants and financial advisors in

these Chapter 11 cases and to appoint John L. Palmer, CTP to serve as the individual manager

acting as the Debtors' chief administration officer.  The Debtors have determined that such

retention, in accordance with the Management Agreement attached hereto as Exhibit "A" (the

"Agreement"), is in the best interests of the Debtors, the estates and the creditors, and that NHB

and Mr. Palmer are well qualified and able to provide these consulting services to the Debtors in

an effective, efficient and timely manner.  Mr. Palmer's *curriculum vitae* is attached as Exhibit

"B."

     6.    The Debtors have selected NHB to provide these required services for the following

reasons:

     (a)    NHB is experienced in rendering the services required by the Debtors.
NHB is a management consulting and financing advisory firm that
specializes in providing crisis and turnaround management consulting to
distressed companies such as the Debtors.  NHB has extensive experience
providing turnaround consulting services to companies both in Chapter 11
as well as outside of bankruptcy.  It is a nationally recognized turnaround
and crisis management firm, having been named one of the "Outstanding
Turnaround Firms" for the last 13 years in *Turnaround & Workouts,* a
leading industry publication.  This extensive background and experience
in working with companies in Chapter 11 cases and requisite skills and
abilities will enable NHB to provide all of the services the Debtors
require.

     (b)    As set forth in the Declaration of John L. Palmer (the "Declaration")
offered in support of this Application and attached hereto as Exhibit "C,"

- 3 -

Mr. Palmer, in particular, has experience in Chapter 11 cases and is well qualified to represent the Debtors.

(c)     NHB and Mr. Palmer conducted an assessment of the Debtors and their operations pre-petition, and therefore, have an understanding of the Debtors and their operations, enabling NHB and Mr. Palmer to provide services efficiently and promptly.

7.     During the pendency of these bankruptcy cases, NHB will continue the work which it commenced pre-petition.  It will continue to provide business advice crucial to the Debtors and will provide advisory services that NHB and the Debtors deem appropriate and feasible in order to assist the Debtors' efforts at maximizing value for the benefit of the Debtors' estates.  The Debtors believe that NHB's advisory services will not duplicate services that other professionals are providing to the Debtors in these bankruptcy cases, and  NHB will coordinate with the Debtors' other professionals to ensure no services are duplicative in these Chapter 11 cases.

8.     The fee schedule is set forth in the Agreement (the "Fee Structure"). As stated in the Agreement, the Debtors propose to pay NHB fees for services rendered by personnel of NHB based upon the daily and hourly rates regularly charged by NHB for the services of its personnel, as such rates may be adjusted from time to time.  Debtors will reimburse NHB for reasonable expenses incurred by NHB for travel, including, without limitation, for travel, fax, phone and courier.  NHB agrees to use reasonable efforts to keep such expenses at the lowest practical level.  Travel time shall be billed at one half the normal hourly rate.  Current rates for a principal of NHB is $425/hr, managing director is $400/hr and other professional staff is $150-$350/hr. The Debtors provided NHB a $67,500 retainer to apply against unpaid fees and expenses.

- 4 -

9.      The Debtors seek approval of the Fee Structure consistent with the terms of the Agreement and pursuant to Section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "…with the court's approval, may employ or authorize the employment of a professional person under Section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, … or on a contingent fee basis… ."

10.     Accordingly, Section 328(a) of the Bankruptcy Code permits the Court to approve the Fee Structure.  The Fee Structure appropriately reflects the nature and scope of the services to be provided by NHB and NHB's substantial experience with respect to management consulting services.  The Fee Structure is consistent with fees charged by similarly situated restructuring advisors for similar services and has been approved by other Bankruptcy Courts around the country.

11.     NHB will seek compensation and reimbursement of reasonable, necessary expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

12.     As further described in the Declaration, to the best of their current knowledge, NHB does not represent and does not hold any interest materially adverse to the Debtors, their estates or the creditors in regard to the matters upon which they are to be engaged.  Accordingly, NHB is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

13.     To the best of the Debtors' knowledge, NHB represents no interest adverse to the Debtors, creditors, any other party in interest, their respective attorneys, and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, in the matters for which they are to be engaged except as disclosed herein and in the Declaration.

- 5 -

14.    NHB reserves the right to amend this Application to disclose other relevant facts which are not now known but which may be revealed to NHB during the administration of this case, and to disclose any changes occurring to the facts disclosed herein.

15.    All future connections or relationships with parties in interest, including the Debtors, Debtors' attorneys and accountants, creditors, creditors' attorneys and accountants, and other professionals, will be disclosed timely to the Court, creditors committee (if any) and the United States Trustee.

**WHEREFORE,** the Debtors pray for authority to retain and employ NHB to provide to the Debtors the services set forth in the Agreement in accordance with the terms and conditions in the Agreement, and for such other and further relief as may be just and proper.

This  29th  day of April, 2008.

Respectfully submitted,

SCROGGINS & WILLIAMSON

  /s/ Ashley R. Ray
J. ROBERT WILLIAMSON
1500 Candler Building                   Georgia Bar No. 765214
127 Peachtree Street, NE                ASHLEY REYNOLDS RAY
Atlanta, GA 30303                       Georgia Bar No. 601559
(404) 893-3880                          Counsel for the Debtors

# MANAGEMENT AGREEMENT

This Agreement made this 23rd day of April, 2008 by and between Verso Technologies, Inc. (the "Client"), with its principal place of business at 400  Galleria Parkway Se, Atlanta, GA 30339 ("Facility") and NachmanHaysBrownstein, Inc. with offices at 822 Montgomery Avenue, Suite 204, Narberth, PA  19072 ("Manager").

**WHEREAS,** Client is insolvent and can not meet its ongoing obligations as they become due; and

**WHEREAS**, Client's Board of Directors is liquidating Clients' business under a Chapter 11 Plan; and

**WHEREAS,** Client's Board of Directors has voted to appoint a Chief Administration Officer ("CAO" ) to direct the liquidation of Client's business and maximize its value for creditors; and

**WHEREAS**, Client has agree to petition the bankruptcy court for authorization to retain Manager as its Chief Administration Officer; and

**WHEREAS**, Client and Board of Directors desires to retain the services of Manager as set forth herein in accordance with the terms and conditions of this Agreement; and

**WHEREAS**, Manager desires to use its best efforts to provide the services to Client as set forth herein, in accordance with the terms and conditions of this Agreement.

**NOW THEREFORE**, in consideration of the mutual promises set forth herein, and intending to be legally bound, Client and Manager hereby agree as follows:

I)    **NATURE OF SERVICES**

A) Manager will conduct an orderly liquidation of Client's business consistent within the directives of the Board of Directors, pursuant to the bankruptcy code and orders of the bankruptcy court:

(i)    Manager will assist the Client to maximize recovery of its assets for the benefit of creditors, in order of priority;

(ii)    Manager will represent the Client as an Officer of Client as required during the bankruptcy process;

(iii)    Manager shall advise the Board of Directors regarding the Board's duties, responsibilities and tasks during the bankruptcy process;

**EXHIBIT "A"**

(iv)    Manager's designee as CAO shall assume such other duties as are usually and customarily performed by a Chief Executive Officer, Chief Operating Officer, Chief Financial Officer or Chief Restructuring Officer, as the case may be, of a business of similar kind and size;

(v)    Manager shall take responsibility for vacating facility prior to June 30, 2008 and retain the necessary financial records from facility;

(vi)    Manager's designee shall be duly elected to the office of Chief Administration Officer in accordance with the by-laws of Client, and the by-laws or other proper corporate resolutions of Client shall authorize Manager to perform the duties set forth in this agreement.

B) The Manager and the CAO shall be as thoroughly covered as the most well covered officer and director by such directors' and officers' insurance policy, or other general liability policy or policies, as Client shall have in effect from time to time. It is a specific requirement of this engagement that such directors' and officers liability insurance be in place at all times during the course of this engagement, and Client shall inform the bankruptcy court of this requirement when submitting this Agreement for approval.

C) Notwithstanding the foregoing, Manager shall have:

(i)    No duty or authority to enter into any contract or to pursue a course of action which requires the approval of the Board of Directors of Client without having first obtained such approval;

(ii)    No duty, no responsibility, and no authority with respect to regulatory compliance duties, including without limitation: (a) the management, handling, transport, disposal or remediation of hazardous waste or hazardous substances; (b) compliance with applicable federal, state or local statutes, ordinances, regulations orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (c) filings with federal and state securities authorities and filings and payments to federal, state, and local taxing authorities, and;

(iii)    In acting on behalf of Client, no duty to nor any authority to enter into any agreement with Manager (other than as necessary to carry out the terms of this Agreement) nor to extend, renew, modify, amend or terminate this Agreement.

## II)    REPORTING RESPONSIBILITY

A) The Manager shall report to the Board of Directors of Verso Technologies, Inc.

**III)    REGULATORY COMPLIANCE**

    A)  All regulatory compliance decisions are the responsibility of Client; and, without limitation, Manager shall have no duty, no responsibility, and no authority with respect to regulatory compliance duties, including, without limitation:  (1) the management, handling, transport, disposal or remediation of hazardous wastes or hazardous substances; (2) compliance with applicable federal, state or local statutes, ordinances, regulations, orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (3) filings with federal and state securities authorities and federal, state and local taxing authorities.

**IV)    TERM OF AGREEMENT**

A)  This Agreement will commence at the beginning of business on April __, 2008 or at such later time as it is approved by the bankruptcy court and end at the close of business April 30, 2009 ("Ending Date") unless ended earlier by order of the bankruptcy court.  In the event either party to the other does not afford written notice of termination of this Agreement within 15 days of any Ending Date, the Ending Date shall be deemed extended by one month.

    B)  Notwithstanding the foregoing Section II (A), this Agreement shall terminate upon fifteen (15) days written notice by either party to the other as provided herein.  Termination under this paragraph shall be effective only when the bankruptcy court approves such written notice.

**V)    PLACE OF WORK**

A)  Manager's services shall be performed at Client's various locations as deemed appropriate by Manager, or at an appropriate location rented by Client.  The Facility identified in this Agreement will be vacated as soon as reasonable and is acknowledged by Client to not be an appropriate location.

**VI)    FEES TO MANAGER**

A)  Retainer
Client agrees to pay to Manager a retainer of $75,000 upon execution of the Agreement, to be maintained as security throughout the term of this Agreement, to be applied if necessary against the final invoice for fees and expenses and the balance, if any, to be refunded to Client without interest.

B)  Fees and expenses
    (i)  Client agrees to pay fees for services rendered by personnel of Manager based upon the daily and hourly rates regularly charged by Manager for the services of

- 3 -

its personnel, as such rates may be adjusted from time to time.  Client agrees to
reimburse Manager for expenses incurred by Manager by reason of this
Agreement for travel, including air travel and rental car, and for lodging and meal
expenses whenever Manager's personnel are away from home.  Manager agrees
to use its best efforts to keep such expenses at the lowest practical level.  Travel
time shall be billed at one half the normal hourly rate.

    (ii)     Hourly Rate

|  | **Hourly Rates** |
|---|---|
| Principal | $425.00 |
| Managing Director serving as CRO | $400.00 |
| Other Professional Staff | $150.00 - $350.00 |

C)  Manager shall maintain and submit time slips documenting its activities in accordance
with Bankruptcy Court procedures.

D)  Billing and Payment

    (i)     Manager agrees to render bi-weekly invoices to Client for fees and expenses
of its personnel, and any delay in rendering such invoices shall not constitute a
waiver of such fees and expenses.  Client agrees to pay such invoices within two
business days of receipt by wire transfer to Manager's bank ABA# 031-000053
Account #86-0583-9972 at PNC Bank in Philadelphia, PA, with telephone
notification to Judy Sacher at 610-660-0060, Extension 227.  Alternatively,
payments may be made by certified or cashier's check within two business days
of receipt.

    (ii)    Client shall petition the bankruptcy court to retain Manager as an ordinary
course professional whose fees can be paid bi-weekly and are not subject to
holdback.

    (iii)   In the event that payment of Manager's invoice requires court approval, Client
agrees to direct its attorneys to seek such approval on a schedule no less
advantageously than applied to any other professional.

E)  Taxes

    (i)    Client agrees that all taxes due by reason of amounts payable, or paid, to
Manager under this Section VI (for instance, sales taxes) are the responsibility of
and to be paid by Client, other than federal, state, and local taxes of the
Manager's place of residence.

- 4 -

## VII)   STATUS OF MANAGER

A) John L. Palmer will be the individual designated by Manager to act as the Chief Administrative Officer, in performing this Agreement (the "Individual Manager"). Until such time as Client receives written notification to the contrary from Manager such Individual Manager has full authority to carry out this Agreement on behalf of Manager.

B) Other representative of Manager shall be considered representatives of the Chief Administrative Officer and shall have the authority to act as directed by the CAO.

C) Manager has authority to terminate Individual Manager as the individual performing the duties for Manager under this Agreement and to substitute another individual to perform its duties under this Agreement.  Client shall be afforded written notification of such termination and substitution.

D) Manager and Individual Manager shall perform all services as independent contractors and not as employees of Client, and neither Manager nor Individual Manager shall receive any remuneration from Client, including participation in disability, retirement, pension, profit sharing or other benefit or deferred compensation plans of Client, other than as set forth herein.  The name of the Manager, and its personnel including the Individual Manager, shall not be set forth in any document of the Client, or otherwise used by the Client, unless the Manager in acting for Client sets forth such name(s) or the Manager shall have previously consented thereto in writing.


## VIII)  INDEMNIFICATION AND HOLD HARMLESS

**A.**   Indemnification and Hold Harmless

   i)   Unpaid employee payroll and payroll taxes
At the time of this Agreement, Client has accrued an unmet payroll liability. Additionally, Client may have improperly diverted an undetermined amount of trust fund taxes.  Client's current management and owners acknowledge that they may face personal and/or criminal liability for these unpaid taxes and specifically indentify Manager for any and all liability arising from these taxes.  This indemnification intents beyond Client's assess and its obligation of Client's pervious Officers and its previous and current Directors, (collectively the "Tax Indemnifiers").  The Tax Indemnifiers separately and collectively agreement to assume all costs, including but not limited to attorney's fees, in the performance of this indemnify to Manager

   ii)   General Indemnity
Client agrees to indemnify and hold harmless Manager, to the full extent lawful, against any and all losses, actions, claims, damages, liabilities or costs including reasonable legal fees and expenses (collectively, "Loss"), whether or not in connection with a matter in which Manager is a party, as and when incurred, directly or indirectly, caused by, relating

- 5 -

to, based upon or arising out of Manager acting for Client pursuant to this Agreement. Manager shall not be held liable for errors in judgment. Notwithstanding the foregoing, Client shall have no duty to indemnify or to hold harmless Manager for any loss, action, claim, damage, liability or cost to the extent such Loss is found, in a final judgment by a court of competent jurisdiction, to have resulted primarily and directly from the willful misconduct or unlawful activities of Manager.

B.      Limitation of Liability

Client and its subsidiaries agree that Manager's liability to Client, to the extent not otherwise limited, indemnified or held harmless hereunder , is further limited to the amount of fees paid to Manager hereunder.

C.      Included Indemnitees

These indemnification and hold harmless provisions shall be in addition to any liability which Client may otherwise have to Manager and shall include in addition to Manager, the Individual Manager(s) performing this Agreement, Manager's affiliated entities, directors, officers, employees, agents and controlling persons of Manager within the meaning of the federal securities laws.  All references to Manager in these indemnification and hold harmless provisions shall be understood to include any and all of the foregoing.

D.      Counsel and Notification of Client

If any claim, action, proceeding, or investigation is commenced as to which Manager proposes to demand such indemnification and to be held harmless, it will notify Client promptly upon becoming aware of any such action, proceeding or investigation. Manager will have the right to retain counsel of its own choice to represent it, and Client will pay the reasonable fees and expenses of such counsel; and such counsel shall to its fullest extent consistent with its professional responsibilities cooperate with Client and any counsel designated by it.  Client will only be liable for any settlement of any claim against Manager made with Client's written consent, which consent shall not be unreasonably withheld.

E.      Duration

Neither termination nor completion of the engagement of Manager pursuant to the CRO Agreement shall affect the indemnification and hold harmless provisions which shall remain operative and in full force and effect.

F.      Health, Safety and Environmental Inclusion

For purposes of indemnifying and holding Manager harmless from any breach of the representations, warranties and covenants set forth hereunder, Client agrees to indemnify and hold harmless Manager to the full extent set forth hereunder .

G.  In the event of litigation between Client and Manager, the prevailing party shall be entitled to recover its reasonable fees and expenses, including attorney's fees.

H.  In the event of Client's bankruptcy, Client waives and releases any rights it may have to seek recovery of any compensation or fees paid to Manager hereunder.

**IX)    INFORMATION AND CONFIDENTIALITY**

A)  Information

    (i)      The Client agrees to provide access to all financial and other information and records, and to Client's directors, officers, employees, and representatives, creditors and other stakeholders, as Manager deems appropriate.

B)  Confidentiality

    Manager agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning Client is and shall remain the exclusive property of Client, and no such information shall be divulged by Manager to third parties, other than in the course of the performance of services to be rendered hereunder, unless such information becomes public knowledge or is required by order of a court.

C)  Personnel Disclosure

    (i)      Client is responsible for bringing matters (i.e., sexual harassment, substance abuse) to Manager.

D)  Representations

    (i)      Client is unaware of any material misrepresentations or misstatement with the exceptions of the following:

**X)    ENGAGEMENT OF OTHERS**

    When Client requests or agrees that Manager shall arrange for services of a third-party, Client will compensate third-party service providers, including, without limitation, attorneys, accountants, financial managers, brokers, and property managers, in accordance with the agreed compensation terms of such third-parties.

**XI)    HEALTH, SAFETY AND ENVIRONMENTAL REPRESENTATIONS, WARRANTIES, AND COVENANTS**

A)  Client represents and warrants that, to the best of its knowledge:

    a)  All activities and operations of Client, including without limitation, those at the Facility, have been and are being conducted in compliance with all applicable federal, state and local environmental, health, and safety statutes, ordinances, regulations and orders and requirements of common law ("Environmental Statutes").

b)  No Hazardous Substance (as herein defined) is present in, on, over or under or is migrating from the Facility (or at other facilities owned or leased by Client or its subsidiaries (collectively, "Client Facilities")) in a manner as may require remediation under any Environmental Statutes or, to Client's knowledge, is present in, on, over or under any adjacent premises or is migrating to the Facility or to Client Facilities.  The term "Hazardous Substances" means substances and materials that are regulated pursuant to Environmental Statutes including, without limitation, substances and materials that are or contain hazardous substances, hazardous wastes, hazardous materials, toxic substances, regulated substances, and petroleum as those terms are defined pursuant to any Environmental Statute.

c)  Client has obtained and maintained and is in compliance with all registrations, licenses, permits and approvals, including amendments thereto, issued by governmental agencies pursuant to Environmental Statutes and all are in full force and effect.

d)  The generation, handling, treatment, storage, transportation and disposal of Hazardous Substances and waste by, or on behalf of, Client was and is in compliance with all applicable federal, state and local laws, ordinances and regulations, including Environmental Statutes.

e)  Client has not received any notice of any violation of or investigation or claim of liability under any Environmental Statute regarding or relating to the Facility and Client Facilities and their operation or notice of any investigation or potential liability of Client regarding any other facility including, without limitation, those to which Client, Client Facilities or the Facility sent Hazardous Substances or waste for handling, treatment, storage or disposal ("Other Facilities").

f)  Neither the Facility, Client Facilities, nor any Other Facility is listed or proposed for listing on the National Priorities List or the Comprehensive Environmental Response, Compensation and Liability Information System list promulgated pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq., as amended, or any analogous state or local list.

B)  Client agrees hereafter to remain in compliance with all Environmental Statutes.


**XII)  MISCELLANEOUS PROVISIONS**

A)  Entire Agreement

a)  This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and may not be amended, changed, modified, or supplemented, except in writing signed by each party.

B)  Assignment

- 9 -

a) Neither party shall sell, assign, convey or otherwise transfer this Agreement, or any of the rights, interests or obligations hereunder to any other party without the prior written consent of the other party, except that Manager may assign this Agreement to a corporation in which Thomas D. Hays  III  or Howard Brod Brownstein is a shareholder.

C) Notices

a) Any written notice required to be given hereunder shall be validly given if delivered personally or sent by registered or certified mail, postage prepaid, to the address of the party set forth in the opening paragraph of this Agreement, or to such other address as one party shall provide in writing to the other in accordance with this paragraph.

D) Interpretation

a) The internal laws of the Commonwealth of Pennsylvania applicable to Agreements made and to be fully performed therein shall govern the validity, interpretation, and enforcement of this Agreement.

E) Waiver

a) The waiver of any breach of any provision of this Agreement by a party to this Agreement shall not operate or be construed as a waiver of any subsequent breach by such party.

F) Separability of Provisions

a) If any provision of this Agreement shall be or become illegal or unenforceable in whole or in part for any reason whatsoever, the remaining provisions shall nevertheless be deemed, valid, binding and subsisting.

G) Headings and Paragraphs

a) The headings and paragraphs of this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

## XIII)  DISCLOSURE

A) Manager has many relationships in the business community involving lenders, law firms, accounting firms, consulting firms, independent consultant contractors, and others. These relationships may include Manager in the past or currently: receiving client referrals, providing client referrals, providing or receiving professional services, employing employees or contractors or serving as a contractor, and other types of relationships.  These relationships may include lenders, professionals or others that have a connection with Client and/or Manager's services provided under this Agreement.

- 10 -

Such relationships are expected to continue and new ones may begin during the provision of services hereunder.  Manager represents that its independence in providing services hereunder is not compromised by such relationships, and is willing to confer with Client at Client's request concerning the specific nature of any such relationships Manager may have.

B) Manager and Individual Manager were engaged by Laurus Capital Management LLC, ("Laurus") during the one-week period of April 14, 2008 through April 18, 2008 to conduct an assessment of Client.  Manager and Individual Manager have had continued conversations with Laurus since this one-week assessment.  Laurus is the primary secured creditor of Client and Manager acknowledges that during this initial assessment period it represented Client's secured creditor, who might have a position that is contrary to Client's other stakeholders.  Both Manager and Individual Manager do not believe that this prior assignment will cause Manager or Individual Manager from unduly favoring Laurus or prevent them from dutifully representing all of Client's stakeholders in order of priority, as appropriate in light of the financial situation of Client.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first above written.

VERSO TECHNOLOGIES, INC.

_____

By: _____

Its: _____

NACHMANHAYSBROWNSTEIN, INC.

_____

By: _____
Principal

**NHB Team**

## John L. Palmer, Ph.D, CTP

Managing Director

Office: (610) 660-0060, x230
Mobile: (215) 527-8950
Email: jpalmer@nhbteam.com

### Professional Experience

Dr. John Palmer is a Certified Turnaround Professional and Managing Director in the Philadelphia office. He has led NHB's turnaround teams in such diverse business areas as temporary staffing, equipment service providers, product distribution, printing and biotech/pharmaceuticals. He serves as the Plan Administrator in charge of Montgomery Wards' Chapter 11 liquidation, the largest retail liquidation in US history.

John's bankruptcy experience also includes preference investigation for a creditor's committee, serving as the restructuring consultant to The Museum Company, both before and after it Chapter 11 filings, and serving as the Chief Restructuring Officer during a dot.com liquidation, were he was able to successfully license its software technology to multiple parties. His turnaround experience includes serving as acting CEO of a pharmaceutical equipment manufacturing company and a Philadelphia-based boutique investment bank.



NachmanHaysBrownstein
A Team of Leaders   24

**EXHIBIT "B"**

**NHB Principal**

## Harvey L. Nachman, CTP



**Principal**
**Contact**

Office: (610) 660-0060, x223
Mobile: (215) 280-8646
Email: hnachman@nhbteam.com

### Professional Experience

Harvey Nachman is a Certified Turnaround Professional and Principal. He has more than 25 years of turnaround and financial advisory experience, specializing in finding solutions and increasing or preserving stakeholder values in a variety of industries. He has served as the principal Financial Advisor to the *Museum Company*, a chain of specialty stores with more than 100 locations throughout the country. Additionally, he has represented lender syndications and numerous Official Committees of Unsecured Creditors.

Harvey has served as the restructuring consultant for Debtors both before and after their Chapter 11 filings. He was instrumental in developing plans for the sale of many of these companies, creating plans for all creditors to receive the maximum possible returns. He has also led NHB's turnaround team in assignments in such diverse business areas as retail, temporary staffing, equipment service providers, product distribution, printing and biotechnology/pharmaceuticals, as well as manufacturing businesses.

Harvey is a graduate of the Wharton School at the University of Pennsylvania and has degrees in Economics, specializing in accounting and industrial management and real estate.

NachmanHaysBrownstein
*A Team of Leaders*

19

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| **VERSO TECHNOLOGIES, INC.,** | ) | |
| | ) | **CASE NO. 08-67659** |
| Debtor. | ) | |

**DECLARATION OF JOHN L. PALMER IN SUPPORT OF DEBTORS'
APPLICATION FOR APPROVAL OF EMPLOYMENT OF
NACHMANHAYSBROWNSTEIN, INC.
AS MANAGER AND CHIEF ADMINISTRATION OFFICER FOR DEBTORS**

I, John L. Palmer, declare under penalty of perjury as follows:

1.      I am a Managing Director in the law firm of NachmanHaysBrownstein, Inc. ("NHB"), and in that capacity I have personal knowledge of, and authority to speak on behalf of, NHB with respect to the matters set out herein.  This Declaration is offered in support of the Application of the Debtors in the above-styled case to employ NHB as the Debtors' Manager and Chief Administration Officer (the "Application"), and the matters set out herein are true and correct to the best of my knowledge, information and belief.

2.      Except as stated below, to the best of my knowledge NHB has no connection with the Debtors, its attorneys or any accountant employed by the Debtors, except that NHB has provided consulting services to the Debtor pre-petition, in contemplation of and in connection with this case.  During the period from April 14, 2008, through and including April 18, 2008, an NHB caseteam including myself was retained by Laurus Capital Management LLC ("Laurus"), a secured creditor of the Debtors, for the purpose of providing an assessment of the Debtors and their operations.  NHB and I have discussed the Debtors' financial condition and the status of their operations directly with representatives of Laurus, and NHB was paid $48,953.75 in fees

**EXHIBIT "C"**

and reimbursement of expenses totaling $53,789.37 for the assessment.  The Application accurately sets forth the terms of NHB's pre-petition relationship with the Debtor.

3.      Additionally, in connection with the proposed retention of NHB by the Debtors in these Chapter 11 cases, I caused a review to be undertaken to determine any connections that NHB may have with the Debtors, any creditors or parties in interest.  In connection with that review, I have relied upon information supplied by various NHB employees who maintain NHB's computerized master client and conflicts database.

4.      Except as noted above and based upon that review, which included the Debtors' secured creditors and list of thirty (30) largest unsecured creditors on a consolidated basis, NHB has not represented, currently does not represent, but in the future may represent creditors of the Debtors and other parties in interest in matters unrelated to this case.

5.      Except as otherwise set forth herein, and to the best of my knowledge as of the date hereof, neither the undersigned nor NHB has any connection with the Debtors, any creditors or other parties in interest in this case, its respective attorneys or accountants, the United States Trustee or any person employed in the Office of the United States Trustee, other than unrelated matters in which the undersigned, the firm and other attorneys or accountants may be involved.

6.      NHB has no agreement with any other entity to share with such entity any compensation received by NHB in connection with this Chapter 11 case, except among the principals and associates of NHB, as set forth below.  NHB is a national firm with a well-established reputation in providing financial and management advisory services.  NHB has six Principals: Harvey L. Nachman, CTP; Thomas D. Hays, III CTP; Howard Brod Brownstein, CTP; Edward T. Gavin, CTP; John Tittle, CTP and John Bambach, Jr., (collectively, the "Principals"); several Managing Directors; several Senior Consultants; and other associates

(collectively, the "Associates").   NHB's Principals each own a separate business entity (corporation, limited liability company or other legal entity) of which the Principal is the sole employee, except possibly for family members.  Each of these entities does all or substantially all of its business with NHB. These entities provide the services of the Principals to NHB and its clients pursuant to written agreements between each such entity and NHB.  Except for Nachman, compensation received by the Principals' business entities is substantially unrelated to fees received by NHB from any particular client.  The Associates each have written independent contractor agreements with NHB pursuant to which they provide services to NHB and, through NHB, to its clients, through a business entity owned by each Associate and of which the Associate is the sole employee, except possibly for family members.  Each of the Associates or their respective business entities does all or substantially all of its business with NHB, and all of them are considered regular members of NHB's professional staff and are featured in NHB's marketing literature and on its website.  Compensation received by the Associates or their respective entities is based in substantial part upon fees received by NHB.

7.     Prior to the filing of this bankruptcy case, the Debtors paid NHB $7,500 in connection with work performed in preparation for these bankruptcy filings and a retainer of $67,500 to be held for payment of future services.  Subject to Court approval, this retainer will be held by NHB and applied toward payment of the fees, disbursements and expenses incurred in connection with these Chapter 11 cases.

8.     NHB was paid $48,953.75 in fees and reimbursement of expenses totaling $53,789.37 by Laurus Capital Management LLC, a secured creditor of one or more of the Debtors, in connection with a pre-petition assessment of the Debtors operations and financial conditions performed by NHB at the request of Laurus.

9.      NHB is a "disinterested person," as that term is defined in Section 101(14) of the Bankruptcy Code.    Accordingly, NHB is eligible to serve as management consultant and financial adviser to the debtors.

10.    NHB will continue its review and will update this Declaration and the disclosures herein and will make such supplemental disclosures as circumstances may require.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

This **29** day of April, 2008.

_____
JOHN L. PALMER

*enalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. "152 and 3571.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the attached **Application for Approval of Employment of NachmanHaysBrownstein, Inc. as Manager and Chief Administration Officer for Debtors** by causing it to be deposited in the United States Mail in a properly addressed envelope with adequate postage affixed thereon to the following persons:

David S. Wiedenbaum
Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA  30303

John H. Drucker
Cole, Scholtz, Meisel, Forman & Leonard
900 Third Avenue, 16th Floor
New York, NY 10022

Gary W. Marsh
McKenna Long & Aldridge LLP
303 Peachtree Street NE, Suite 5300
Atlanta, GA 30308

Susan L. Uecker
Trustee for Clarent Corporation
Uecker & Associates
100 Pine Street, Suite 475
San Francisco, CA  94111

This   29th  day of April, 2008.

Respectfully submitted,

SCROGGINS & WILLIAMSON

  /s/ Ashley R. Ray
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
Counsel for the Debtors

1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303
(404) 893-3880